Catherine Riley
vs.  No. 73757.
Constantine Tsagarakis et al.

March 21, 1935.

FROST, J. Heard on defendants' motion for new trial after verdict for plaintiff in the sum of $12,000.00.

This is an action, resulting from alleged wrongful death, brought by the widow for the benefit of herself and her six children.

On the afternoon of July 15, 1927, Terrence Riley, with other employees of United Electric Railways Company, was engaged in making repairs upon the easterly rail of the easterly of the two tracks on Broad Street just northerly of Wentworth Avenue in the City of Cranston. Earlier in the day workmen had dug a trench which extended easterly from the easterly rail about 15 inches in width and 9 inches in depth. This excavation started at about the northerly line of the roadway of Wentworth Avenue and extended northerly about 36 feet. The dirt was thrown up in a pile 2 feet in height and 3 feet in width at the base. The earth was easterly of the cut or excavation and possibly 18 inches from it.

Northerly of the cut mentioned was another excavation similarly placed and about 46 feet in length. Between the two cuts was a space about 27 feet in length where no work was being done. Three yellow flags with standards approximately two feet square were placed at intervals on the earth taken from the excavation. The width

of the space between the most easterly rail and the easterly curb was 24.25 feet.

Just prior to the accident one William Reilly, also an employee of United Electric Railways Company, with whom was Terrence Riley, had driven around in an automobile in which it was intended to later take away the tools, Reilly parked the automobile beside the easterly curb, headed southerly. He testified that his truck was 7 to 7½ feet in width and that there was room for a machine to pass between his truck and the piles of earth. He also said that he stopped his truck near a pile of tools which were on the sidewalk.

Leland H. Dingee, a foreman with many years of service with the street railway company, according to the testimony, was standing near the northerly end of the southerly cut and between the two tracks, facing northerly. McDermott, a sub-foreman, was facing southerly. Riley came up to get instructions from Dingee and was told to load the tools which were on the easterly sidewalk into the standing truck, the front of which at this time was nearly opposite this group of three men. Riley started away in the general direction of the rear of the truck, which required him to take a course somewhat northerly and easterly of the point where he had been standing when he received his instructions. McDermott said that he saw a truck pass going toward Providence. A little later he heard a "bang" and it was found that Riley had been struck. He was found lying face down, head toward the easterly curb with about four feet of his body outside of the truck and the rest of the body behind the parked truck. Between the body and the truck was a space of four feet. No one, apparently, saw Riley struck. The truck which had passed through the space between the mounds of earth and the parked automobile, and which was proceeding towards Providence, stopped northerly of where the group of three men had been standing and about 50 to 60 feet from the parked automobile truck.

The truck which it is believed struck Riley was one owned by the defendants, who were at that time doing business under the name of Bell Bottling Company. It was driven by a young man, named Spiros Poulos, who was at the time of the accident 21 years of age. He testified that he was driving northerly on Broad Street and when near Wentworth Avenue noticed workmen, piles of earth, &c.; that he saw a parked truck on his right; that he proceeded slowly; that he followed another motor vehicle at a distance of about 6 feet; that the vehicle in front of him was proceeding at a rate of 10 miles an hour; that as he passed the truck parked on his right, he heard a "thump" but didn't know what it was; that when he heard the "thump", he was just passing the rear of the truck parked on his right; that no one crossed directly in front of his machine; that when passing the parked truck there was a space of about 1 to 1½ feet, while on his left there was not more than a foot; that after hearing the "thump", he looked back, saw an object lying in back of the parked truck, stopped his machine and went back and found that it was one of the workmen.

The truck which Poulos was driving had what is termed a "stake" body. The body projected to the right and to the left of the cab a distance of 11 inches.

No damage was done to the front of the machine but there were spots of blood, a little flesh and a few short hairs on the right hand forward corner of the truck body and 4 feet above the ground.

It was later found at the Rhode Island Hospital that Riley had a fracture of the skull, the main line of which fracture was over the right eye and up for about 2 inches. The nasal

bones were elevated. There were bruises on the right side of the body, on the thigh and leg. The left radius was fractured. Riley died in the evening of the day on which he was injured.

When the case was tried there were two theories of the accident. The plaintiff's theory was that Riley was crossing the highway in the direction of the easterly sidewalk and was struck by the oncoming machine. The defendants, on the other hand, contended that the evidence indicated that Riley had crossed the highway and, while turning back, practically walked into the truck which killed him.

The jury evidently did not accept defendants' theory. The jury did not have the benefit of the testimony of an eye witness but, upon the evidence presented, the Court thinks the jury was justified in declining to find that Riley walked into the truck. After the accident there were no tools in the truck, none on the ground to the rear of the truck and the tools upon the sidewalk appeared undisturbed. While he may have turned back, there appears no apparent reason for his doing so. In the absence of such reason and in the light of the testimony as a whole, the more reasonable view is that Riley was still crossing toward the easterly sidewalk when struck.

The driver of defendants' truck is a good appearing young man and apparently alert and wide awake. He testified that he was following another machine at a distance of a few feet. No one else testified that he saw such a machine and McDermott testified that defendants' truck was the only one in sight. It seems highly improbable that a man of Riley's age, 54 years, would attempt to pass between two moving machines with a space between them of only 6 feet and even more improbable that such a person, while crossing, would not be seen by the operator of the second machine.

The Court thinks the jury was justified in finding that no vehicle immediately preceded the defendants' and that either Poulos failed for some reason to see Riley crossing, or that he saw him and assumed that he would be beyond his path when he passed by. Whether Poulos saw Riley or not, he knew that workmen were at work on this particular part of Broad Street. The portion of the road left for him and for others was narrow in width. It was incumbent upon him to proceed with caution under all the circumstances.

It is urged that due care on the part of the intestate was not shown by the plaintiff. It is true that no eye witness described Riley's course across the street but, considering the part of the truck that struck him and the position of the body upon the highway, it is reasonable to conclude that he was nearly across the highway when struck. If defendants' truck was proceeding at 10 miles an hour, as claimed, the jury might fairly conclude that when he started across the truck must have been a sufficient distance away to justify Riley in thinking that it was safe for him to cross and also in thinking that if the operator of the vehicle was alert he would and could at that rate of speed slow up somewhat if necessary to allow him to pass. Unless Riley saw to the contrary, he had a right to assume that Poulos was looking ahead.

The Court does not know how the accident happened in the sense that the collision itself was witnessed and described by anyone who saw it. However, the Court thinks that the jury could fairly infer from all the circumstances as testified to, that defendants' servant was negligent and that plaintiff's intestate was in the exercise of due and reasonable care.

Defendants' counsel did not urge the ground of excessive damages and therefore the Court does not consider it.

As the verdict is one that reasonable men might properly reach upon all the evidence and because it is not against the weight of the evidence nor against

the law as given by the Court, defendants' motion for a new trial is hereby denied.

For plaintiff: Hart, Gainer & Carr.

For defendants: Greenough, Lyman and Cross; Voigt, Wright & Munroe.